```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| CAMEO, LLC, | ) |
| | ) |
|     Plaintiff, | ) Civil Action No. 5:08-316-JMH |
| | ) |
| v. | ) |
| | ) |
| ICI AMERICAS, INC., | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
|     Defendant. | ) |
| | ) |

           \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on Defendant's Motion to Dismiss counts I and II of Plaintiff's Complaint and Motion for extension of time to respond to the Complaint [Record No. 9]. Plaintiff responded [Record No. 11], and Defendant replied [Record No. 12]. This matter is now ripe for review.

**I. Facts**

This case centers around an agreement between Plaintiff Cameo, LLC ("Cameo"), and Defendant ICI Americas, Inc. ("ICI"), whereby Cameo would act as a distributor of "Pictaflex," a formable film produced by ICI that allows photographic images and high resolution graphics to be applied to consumer products. Cameo asserts claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and unjust enrichment/quantum meruit (Count III).

Viewed in a light most favorable to Plaintiff, the facts are as follows. On December 14, 2006, Cameo and ICI entered into a contract which is entitled "Pictaflex Distributor Agreement" (the

"Distributor Agreement"). Pursuant to the Distributor Agreement,[1] ICI appointed Cameo "as its non-exclusive Distributor for the resale of the Products in the Sector in the Territory." (Distributor Agreement, § 2.1). The "Territory" is defined as "the automotive and truck OEM and aftermarket, motorcycle, ATV, camouflage and marine sectors and any other specific clients or sectors sunsequently [sic] agreed between the parties in the geographic area of NAFTA, (North American Free Trade Area)." (*Id.* at Schedule 4). While the Distributor Agreement provided that Cameo shall "not advertise for, canvass or otherwise seek orders for Products from customers in the Reserved Territory without the written permission of ICI" (*Id.* at § 3.3.1), Cameo was not precluded from "selling the Products in response to unsolicited enquiries from customers in the Reserved Territory." (*Id.* at § 3.4). The "Reserved Territory" is defined as "all territories and sectors outside the automotive and truck OEM and aftermarket, motorcycle, ATV, camouflage and marine sectors in the geographic area of NAFTA, (North American Free Trade Area)." (*Id.* at Schedule 2). Cameo alleges, and the Distributor Agreement seems to confirm,

---

[1] Although Cameo did not file the Distributor Agreement as an exhibit to the Complaint, because Cameo relied on same in its Complaint, the Court may properly consider the Distributor Agreement, which was filed as an exhibit to ICI's Motion to dismiss, without converting ICI's Motion to dismiss into a motion for summary judgment. *See Chas Coal, LLC v. Nat'l Coal Corp*, 2007 WL 136312, *3 (E.D. Ky. Jan. 16, 2007)("the Sixth Circuit has held that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'") (quoting *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997)).

that Cameo was to distribute Pictaflex to customers at a 25% mark-up.  (*See* Distributor Agreement, Appendix 2).

During the parties' negotiation of the Distributor Agreement, a representative of Dell, Inc. contacted Cameo regarding the need for decoration options for a large volume of notebook computer covers (the "Dell opportunity").  Cameo informed Dell that Pictaflex could meet its needs.  Upon being informed of the Dell opportunity, ICI expressed its desire that Cameo pursue same.  At Dell's request, on December 15, 2006, in Austin, Texas, Cameo presented the Pictaflex product to Dell representatives.  On or about December 18, 2006, Dell contacted Cameo about further pursuing the use of Pictaflex.

On or about December 29, 2006, ICI expressed its desire to meet with the Dell representatives.  Near that time, Cameo proposed to amend the terms of the Distributor Agreement to provide that ICI could directly supply Dell with the Pictaflex film. [2]  During a January 5, 2007 meeting, ICI stated that Cameo would receive between 10 and 15% commission on the Dell opportunity.  Throughout January and February of 2007, Cameo managed the preparation and supply of notebook covers sent to ICI for sampling in preparation for another meeting with Dell.

The parties were unable to reach an agreement regarding Cameo's commission on the Dell opportunity.  Cameo asserted that the Dell opportunity fell within the terms of the Distributor

---

[2] The Distributor Agreement provided that Cameo would purchase Pictaflex from ICI and then sell it to customers, holding an inventory sufficient to meets its customers' needs.

3

Agreement, but agreed that the commission should be reduced below the standard 25% to reflect the savings Cameo would realize through ICI's direct shipments to Dell. ICI proposed a separate agency contract for the Dell opportunity, whereby Cameo would receive between 5 and 8% commission. It was around this time that ICI requested that Cameo "back off" so that ICI could establish a relationship with Dell. In March, 2007, Cameo learned that it had been excluded from a series of meetings between Dell and ICI. On March 23, 2007, ICI offered Cameo 6% commission on Pictaflex sales to Dell, capped at $100,000, or two years, whichever came first. Cameo rejected the offer. It is Cameo's belief that Dell has contracted to purchase Pictaflex from ICI, with a $5 million upfront payment to ICI and a total expected revenue of $28 million during the first two years of the contract.

**II. Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997). If it

appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, *2 (E.D.Ky. Sept. 27, 2007).

**III.  Analysis**

ICI argues that Cameo's breach of contract claim should be dismissed because 1) the Dell opportunity was not encompassed by the Distributor Agreement and 2) Cameo did not have, nor did it intend to have, the financial wherewithal to support the Dell opportunity.  It is also ICI's position that because the Dell opportunity was not within the scope of the Distributor Agreement, Cameo's claim for breach of the implied covenant of good faith and fair dealing must fail.

To state a claim for breach of contract, one need only "state the contract, the breach and the facts which show the loss or damage by reason of the breach." *Fannin v. Comm. Credit Corp*, 249 S.W.2d 826, 827 (Ky. 1952).  Cameo's Complaint clearly states that the contract on which its claims are based is the Distributor Agreement entered into on December 14, 2006.  The breach alleged by Cameo is ICI's refusal to honor the Distributor Agreement as to the Dell opportunity.  As a result, Cameo alleges that it suffered

5

considerable damage by being deprived of its commission on the Dell opportunity, an opportunity which Cameo believes resulted in a $20 million contract between Dell and ICI.

ICI repeatedly reiterates that Dell, a computer manufacturer, is not within Cameo's Territory under the Distributor Agreement. What ICI fails to address is the fact that pursuant to § 3.4 of the Distributor Agreement, Cameo was permitted to sell Pictaflex to customers in the Reserved Territory, which essentially encompassed everything outside of the Territory, so long as the Reserved Territory customer inquiries were not solicited by Cameo. The Distributor Agreement expressly permitted Cameo to sell Pictaflex in response to unsolicited inquiries from customers in the Reserved Territory. Any discussion of the Reserved Territory provision is conspicuously absent from ICI's Motion and Reply.

As further support for its contention that the Dell opportunity was not with the scope of the Distributor Agreement, ICI postulates that Cameo's proposal to amend the terms of the Distributor Agreement to reflect the split of resources between ICI and Cameo on the Dell opportunity is evidence that Cameo recognized that the Dell opportunity fell outside the scope of the Distributor Agreement. The Court does not follow ICI's logic. If Cameo offered to amend the Distributor Agreement to handle the Dell opportunity differently than the norm, then it must follow that the Dell opportunity was within the scope of the Distributor Agreement,

6

otherwise, no amendment would be necessary. Regardless of the implications of Cameo's proposed amendment, to the extent that ICI disagrees with Cameo's interpretation of the Distributor Agreement, the controversy goes to the merits of Cameo's breach of contract claim, not the issue of whether Cameo properly stated a claim, which is at issue in the current motion.

The Court is perplexed by ICI's argument that Cameo's breach of contract claim must be dismissed because Cameo did not have the financial wherewithal to support distribution of the volume of Pictaflex that Dell would require. Cameo's ability to muster the financial resources to support the Dell opportunity is immaterial to the question of whether Cameo stated a claim for breach of contract.

Finally, in its Reply, ICI points the Court to what is labeled a "Product Supply Agreement." The Product Supply Agreement purports to be a contract between ICI and Cameo governing Cameo's distribution of Pictaflex to Strikeforce Bowling LLC. The Product Supply Agreement is outside of the pleadings in this matter. The Court declines to consider the Product Supply Agreement, as doing so would convert this motion to dismiss into one for summary judgment, which the Court believes is inappropriate at this juncture. *See* Fed.R.Civ.P. 12(d).

**IV. Conclusion**

Accepting as true all well-pleaded facts set forth in the

Complaint, Cameo has stated claims which are valid on their face. Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

1) That Defendant's motion to dismiss counts I and II of Plaintiff's Complaint [Record No. 9] shall be, and the same hereby is, **DENIED**; and

2) That Defendant shall have **fifteen (15) days** from the date of entry of this Memorandum Opinion and Order in which to answer or otherwise respond to Plaintiff's Complaint.

This the 16th day of January, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge